IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA MARIE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2: 10-cv-00378 |
| | ) | |
| PNC FINANCIAL SERVICES GROUP, | ) | |
| | ) | JUDGE MCVERRY |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court for disposition is the MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 8(a) AND 12(b)(6), with brief in support, filed by Defendant PNC Financial Services Group, Inc. (Doc. Nos. 6 and 7, respectively). Plaintiff filed a brief letter to the Court opposing Defendant's motion to dismiss. (Doc. No. 10). The motion is ripe for disposition. For the following reasons, Defendant's motion to dismiss will be granted in part and denied in part.

**Factual Background**

Plaintiff, Lisa Marie Clark, initiated this case by the filing of a Complaint alleging race discrimination against Defendant, PNC Financial Services Group, Inc. ("PNC").[1] (Doc. No. 2). Plaintiff additionally avers that Defendant discharged her in July of 2009 in retaliation for her filing a prior charge of disability discrimination against PNC with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") in September of 2002. (Compl. at ¶ 14; Doc. No. 7). Further, Plaintiff alleges that she was retaliated against for objecting to the conditions at PNC's employee dining area, Café

---

[1] The Court notes that the Complaint identifies Defendant as "PNC Financial Services Group." In its motion to dismiss, Defendant corrects its name as "PNC Financial Services Group, Inc."

1

36. (Compl. at ¶ 18).

The following facts are taken from the Complaint. Plaintiff began her employment with Defendant on June 24, 2001 as a Financial Services Consultant. Approximately one year later in July of 2002, Plaintiff requested to be transferred to PNC's Channel Services Department, a transfer that would change her duties to processing paperwork and conducting research, as compared to her then-current position that involved regularly speaking with customers. Plaintiff cited her tempo-mandibular joint disorder (TMJ) as the basis of her request. PNC denied her transfer request. In response to which, Plaintiff filed a disability discrimination complaint with the PHRC and EEOC alleging that PNC violated Section 5(a) of the Pennsylvania Human Relations Act 43 P.S. 951-963 ("PHRA") on or about September 4, 2002. Thereafter, PNC transferred Plaintiff to the Channel Services Department, provided Plaintiff with a wage increase, and compensated her for losses she had incurred. Plaintiff subsequently withdrew her complaint.

Beginning sometime in 2008, Plaintiff avers that she began "noticing a petrifying pattern" of conference calls and requests directed to Plaintiff from Jan Law, an employee in Defendant's human resources department. According to the Complaint, Jan Law harassed Plaintiff "by constantly calling" Plaintiff into her office or "by repeated conference calls." On numerous occasions, Plaintiff was informed by Jan Law that she would be terminated if she was untruthful or dishonest. Also, since November 2007, Plaintiff has not received her annual raises of 2.34 percent.

The Complaint also describes circumstances involving a 2009 investigation into the unauthorized use of a postage machine by employees of the Channel Services Department. Apparently, Lynn Coppolla, a fellow employee in the department, attempted to mail a personal package using the UPS machine. The package was returned to PNC as undeliverable, which

precipitated the investigation into the use of company resources for personal reasons.  As part of that investigation, Plaintiff was questioned by Jan Law on June 29, 2009, and was asked whether she had used the postage machine to mail any personal items in the past.  In response, Plaintiff admitted that she had used the UPS machine to mail a package to her brother in Houston, Texas, but Plaintiff also noted that many other employees had also used the UPS machine for such personal use.  According to Plaintiff, she initially offered to reimburse Defendant the $30 it cost to send her package, but changed her mind when Jan Law told Plaintiff to make the payment out directly to Law.  Thereafter, Plaintiff was suspended with pay from the Channel Services Department.  On July 15, 2009, Plaintiff's employment with Defendant was terminated and Plaintiff was informed that the termination was based on her use of company property for personal use.  Plaintiff, who is black, contends that "other white employees" who had also used the company UPS machine for personal use were not suspended or discharged.  More particularly, Plaintiff alleges that PNC allowed Lynn Coppolla to continue working for approximately 2 1/2 additional weeks before she was discharged by PNC.  Plaintiff asserts that Lynn Coppolla had "time to clean up her desk, take home any personal items and destroy any damaging evidence that might convict her."  In addition, Plaintiff alleges other white employee, Sue Broman, Mike Weber, Joe Frizzi, and Mike Cendric, also used the machine and were never discharged.  After Plaintiff was discharged, PNC developed a new employee code of conduct policy with regard to the use of PNC property.

Plaintiff also alleges that she was retaliated against for objecting to conditions at Café 36, the employee dining area.  Café 36, a restaurant available to PNC employees and to the public, is owned by Defendant.  Park Hurst Dining supplies Café 36 with food, products, and employees.  On June 4, 2009, Plaintiff filed a complaint with Park Hurst, asserting that Café 36 has

"unhealthy, unsanitary [and] unethical practices." According to Plaintiff, she was fired approximately five (5) weeks after she filed that complaint.

## Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint filed by the plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alterations in original)).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a **plausible** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (*citing Twombly*, 550 U.S. at 556) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id*. Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement

to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (*citing Iqbal*, 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than a possibility of relief to survive a motion to dismiss." *Fowler*, 578 F.3d at 210. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (*quoting Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Fed. R. Civ. P. 8(a)(2) holds that a pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (*citing Twombly*, 550 U.S. at 553).

When a complaint is pro se, the allegations should be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). This less stringent standard however, does not excuse the Plaintiff of the baseline requirements for pleading, as articulated above. Even if a complaint alleging a civil rights violation is pro se, dismissal for failure to state a claim is appropriate when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Generally, "to the extent that a court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint are essential to a plaintiff's claim, which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Germane to this motion, the Court notes that attached to the brief in support of Defendant's motion to dismiss was a copy of Plaintiff's October 14, 2009 charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC").

### Discussion

While not set forth with separately enumerated counts, Plaintiff's complaint essentially attempts to raise three claims. For the reasons that follow, two of the claims will be dismissed without prejudice, and Plaintiff will have leave to amend if she should so choose.

**A.    Plaintiff's Claim of Disparate Treatment under Title VII**

With respect to the allegations involving the Defendant's investigation into the misuse of

the postal machine in the Channel Services Department, Plaintiff avers sufficient facts to allege discrimination due to her race in violation of Title VII, particularly under a theory of recovery for disparate treatment. Plaintiff alleges that she was treated differently due to her race, specifically that she was suspended and subsequently discharged while white employees who engaged in the same conduct (Sue Broman, Michael Weber, and Joseph Frizzi) were not.[2] Despite its general request for the Complaint to be dismissed in its entirety, Defendant does not specifically address this particular claim. Upon review, the Court is satisfied that Plaintiff has stated a claim for which relief can be granted with her allegation of race discrimination, and will deny Defendant's motion as to the same. The Court's analysis does not stop there, however.

**B.     Plaintiff's Retaliation Claim Fails to Properly Allege Causation Between Her Protected Activity and Her Termination**

With respect to Plaintiff's discharge in retaliation for her 2002 charge of disability discrimination, Plaintiff attempts to allege what would be a claim of retaliation under the American with Disabilities Act ("ADA"). In relevant part, the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a). In other words, generally speaking, it is unlawful for an employer to retaliate against an employee based upon the employee's request for an accommodation or claim of disability discrimination.

To establish a claim of illegal retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's

---

[2]     While only generally referenced within the Complaint itself, this allegation is more particularly described within the October 14, 2009, discrimination charge filed with the EEOC and attached to Defendant's brief. *See* Doc. No. 7 at exhibit B.

protected activity and the employer's adverse action. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 759 (3d Cir.2004). "[T]emporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir.2003) (internal citation and quotation omitted). On the other hand, however, in *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir.1997), the Court of Appeals for the Third Circuit held that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Id.* at 1302. "[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Shellenberger*, 318 F.3d at 189 n. 9 (internal citation and quotation omitted).

Defendant PNC contends that the only protected activity Plaintiff alleges in her Complaint is the filing of a disability discrimination charge in 2002, which is seven years prior to the termination of her employment at PNC. In response, Plaintiff alleges that although "PNC states that there is legal limitation, human grudges can last indefinitely." (Doc. No. 10). The Complaint itself presents a sequence and chronology of events upon which Plaintiff's retaliation claims flow. Plaintiff filed a charge of disability discrimination in 2002 with respect to an allegation that Defendant failed to accommodate her disability. Plaintiff subsequently withdrew her charge of discrimination following some form of resolution with Defendant in which she was given a position to her satisfaction, as well as monetary relief. Based upon that sequence, Plaintiff generally alleges that the termination of her employment with Defendant in 2009 was in retaliation for her previous protected activity, and that it violated her civil rights.

The seven-year time period between Plaintiff's discharge from PNC and the alleged protected activity is, without more, insufficient to raise an inference of causation. The temporal proximity in this case is not "unusually suggestive," and Plaintiff pleads no additional basis to establish a causal link that she was discharged in 2009 in retaliation for filing a discrimination charge seven years prior, in 2002.

The Court concludes that the protected activity Plaintiff engaged in with filing complaints with the PHRC and EEOC in 2002 is temporally remote from her termination in 2009. Accordingly, the Court will grant Defendant's motion to dismiss Plaintiff's claim of retaliation without prejudice.

**C.    Plaintiff's Claim of Retaliation for Reporting Unsafe Conditions in the Cafeteria**

Plaintiff alleges that Defendant retaliated against her because she "blew the whistle on the unhealthy, unsanitary [and] unethical practices of café 36 employees" and she filed a complaint with Park Hurst Dining, which supplies Café 36 with food, products, and employees. (Compl. at ¶ 18). Similar to the other claims in the Complaint, Plaintiff did not specifically attribute the basis of her claims to statutory remedies other than a more general averment that Defendant discriminated against her in violation of her civil rights. Defendant has moved to dismiss this claim on the basis that is fails to state a claim under the Pennsylvania Whistleblower Act. Before considering Defendant's basis for dismissal, the Court will address whether Plaintiff has raised a litigable claim under a federal statute prohibiting workplace discrimination.

Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity. Section 704(a) of Title VII, referred to as the opposition clause, provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "In order to prevail on a claim for retaliation under Title VII, an employee must prove that (1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a "causal link" exists between the adverse action and the protected activity." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir.2001). Such protected activities can be in the form of opposition to an act of discrimination made unlawful by Title VII, *see e.g., Johnson v. City of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), *cert. denied*, 121 S.Ct. 657 (2000), or by participating in an investigation under Title VII, *see e.g. Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021 (8th Cir. 2002). Simply stated, complaining about unsanitary conditions in the employee cafeteria is not a protected activity under Title VII. Likewise, such complaints do not constitute a protected activity under the ADA. The Court turns to Defendant's contention that these allegations fail to state a claim under the Pennsylvania Whistleblower Act.

Pennsylvania has recognized "an employer's unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition." *Despot v. Metro. Life Ins. Co.*, 1999 WL 33888165 at *10 (Pa. Super. Ct. June 28, 1999) (*quoting Field v. Philadelphia Electric Co.*, 565 A.2d 1170, 1179 (Pa. Super. Ct. 1989)). Therefore, an at-will employee cannot maintain a claim for wrongful discharge. *Despot*, 1999 WL 33888165 at *10. However, Pennsylvania recognizes a narrow exception to the employment at-will doctrine, which is applicable only in cases "where [the] termination threatens clear mandates of public policy." *Id*. (*quoting Pipkin v. Pennsylvania State Police*, 693 A.2d 190, 191 (1997). *See also Krajsa v. Keypunch Inc.*, 622 A.2d 355, 358 (1993) ("Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees

would threaten clear mandates of public policy") (*quoting Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989)).

The Pennsylvania Whistleblower Law does not apply to private employers, and the "protections contained in the Whistleblower Law apply only to employees of a 'public body.'" *Despot*, 1999 WL 33888165 at *14 (*quoting McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 175 (Pa. Super. Ct. 1997)). The Whistleblower Law is "limited to employees discharged from governmental entities or any other body which is created or funded by the government." *Krajsa*, 622 A.2d at 360.

Here, Defendant argues that Plaintiff's purported whistleblower claim should be dismissed because Plaintiff was an "at-will" employee of a private employer. In addition, Defendant asserts that none of the at-will exceptions apply in this case. According to Defendant, Plaintiff's claim against Park Hurst, PNC's third party vendor, is not cognizable under Pennsylvania law to the extent that Plaintiff alleges she was terminated for initiating a charge with regard to the unhealthy and unethical practices of Park Hurst.

Plaintiff contends in response that although PNC is a private organization, the cafeteria is "open to the public and multiple employees of different employers" who eat there on a daily basis, which thus puts the "public's health at risk." (Doc. No. 10).

In the Complaint, Plaintiff admits that her employment at PNC was at-will, and she states that her "employer can let me go for no reason on any reason, and I can resign without giving them a reason as well." (Compl. at ¶ 18). PNC is not a government entity, nor is it created or funded by the government. Because Plaintiff is therefore not a public employee and not afforded the protections of the Whistleblower Law, Plaintiff's charges against Café 36 are not sufficient to establish a cause of action for retaliatory discharge in connection with Plaintiff's termination.

Additionally, none of the exceptions to the Whistleblower Law apply in this case, and Plaintiff does not assert any basis that her termination would threaten public policy. Accordingly, the Court will grant Defendant's motion to dismiss this claim without prejudice.

**Leave to Amend the Complaint**

Pursuant to Fed.R.Civ.P. 15(a), "if a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed, such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). If a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, "the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108. However, Plaintiff is not required to request leave to amend if she chooses to do so. *Id*. (internal citations omitted). To that end, because the Court is not dismissing Plaintiff's Complaint in its entirety, Plaintiff has the option to stand on the existing Complaint, or to amend in light of this opinion.

**Conclusion**

For the hereinabove stated reasons, the Motion to Dismiss Complaint filed by Defendant will be GRANTED in part and DENIED in part.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA MARIE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2: 10-cv-00378 |
| | ) | |
| PNC FINANCIAL SERVICES GROUP, | ) | |
| | ) | JUDGE MCVERRY |
| Defendant. | ) | |

**ORDER OF COURT**

**AND NOW**, this 13th day of October, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that DEFENDANT'S MOTION TO DISMISS (Doc. No. 7) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED WITHOUT PREJUDICE** as to:

1) Plaintiff's allegation of Defendant's retaliation taken against her for filing her disability discrimination claim; and

2) Plaintiff's allegation of Defendant's retaliation taken against her for voicing a complaint about the dining conditions of Café 36.

The motion is **DENIED** as to Plaintiff's allegation of discrimination due to her race.

It is **FURTHER ORDERED** that if Plaintiff chooses to amend her Complaint, she must do so on or before October 28, 2010.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Lisa Marie Clark
818 Gearing Avenue
Pittsburgh, PA 15210

Pamela G. Cochenour, Esquire
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
Email: PGC@pietragallo.com